# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 1:22CR615 |
| ) | |
| Plaintiff, ) | JUDGE J. PHILIP CALABRESE |
| ) | |
| v. ) | **DEFENDANT LAWRENCE** |
| ) | **STURDIVANT'S** |
| LAWRENCE STURDIVANT, ) | **MOTION FOR 17(C) SUBPOENAS** |
| ) | |
| Defendant. ) | |

Defendant Lawrence Sturdivant, through his undersigned counsel, respectfully moves the Court pursuant to Federal Rule of Criminal Procedure 17(c) to permit the issuance of the attached subpoenas to Flock Safety, Selex ES, LLC, Chagrin Valley Dispatch, the City of Highland Heights, the City of Newburgh Heights, and the City of Brooklyn, to produce objects to the defense.

A Memorandum in support of this Motion is attached hereto and incorporated by reference herein.

Respectfully submitted,

/s/ *Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
**Flannery │ Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
Tel./Fax: (216) 367-2094
paul@flannerygeorgalis.com

*Attorney for Defendant Lawrence Sturdivant*

**MEMORANDUM**

The government has produced discovery in this matter, including photographs and location data associated with license plate reader ("LPR") technology currently utilized in Cleveland, Ohio, among other places. Law enforcement officers reviewed LPR data as part of the investigation in this case. Mr. Sturdivant is entitled to review information related to the location, implementation, storage policies, and prevalence of the LPR technology utilized by law enforcement officers during the investigation in this case to prepare for trial and prepare a potential motion to suppress evidence. Despite its best efforts, defense counsel has been unable to obtain all the relevant documents necessary to mount its Fourth Amendment challenge.

On December 12, 2023, the Court, at defense counsel's request, held a telephonic status conference where defense counsel explained the litany of challenges it has faced in trying to obtain the sought-after information. Defense counsel had contemplated filing a motion to subpoena the testimony of various City and County officials to determine what agency or agencies administer the camera systems. Before taking that step, however, defense counsel met with AUSAs Adam Joines and Margaret Kane on December 1, 2023, to discuss next steps. AUSAs Joines and Kane were very helpful and offered to look into the matter to see if they could ascertain any information related to the camera systems. AUSA Kane followed up with defense counsel via email later that day and recommended serving a subpoena to Flock Safety directly[1], as well as to the company that owns the ELSAG cameras (another LPR system utilized in Cuyahoga County) and to the Highland

---

[1] While defense counsel did originally contemplate serving a subpoena to Flock safety directly, defense counsel had concerns that the information maintained by Flock would not encompass the full scope of what Mr. Sturdivant seeks. Mr. Sturdivant seeks information related to all LPR systems used in his investigation, not limited to Flock. Further, Flock will almost certainly not have records related to policies on accessing and using the system, internal communications, complaints, disciplinary reports, etc., which would be unique to the agency administering the system.

2

Heights Police Department, Newburgh Heights Police Department, and Brooklyn Police Department, who were involved in the ALPR camera component of Mr. Sturdivant's investigation.

To that end and per the discussions that took place with the Court and the government at the December 12 status conference, Mr. Sturdivant now moves this Court for additional Rule 17(c) subpoenas to compel Flock Safety, Selex ES, LLC, Chagrin Valley Dispatch, and the Cities of Highland Heights, Newburgh Heights, and Brooklyn to produce relevant evidence that is not otherwise reasonably procurable in advance of trial by the exercise of due diligence.

For these reasons set forth herein, Mr. Sturdivant respectfully requests that this Honorable Court grant his Motion for 17(c) Subpoenas and issue an order authorizing the service of a Rule 17(c) subpoenas to Flock Safety, Selex ES, LLC, Chagrin Valley Dispatch, and the Cities of Highland Heights, Newburgh Heights, and Brooklyn.

## I. CASE BACKGROUND

On October 27, 2022, Mr. Sturdivant was charged with ten counts of violating 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery); three counts of violating 18 U.S.C. § 924(c)(1)(A)(ii) (Use, Carry, and Brandish Firearm During and in Relation to Crime of Violence); and one count of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Felon in Possession of Ammunition). (*See* Indictment, ECF #20.) On May 30, 2023, the undersigned was appointed as CJA counsel for Mr. Sturdivant.

The government generally alleges Mr. Sturdivant committed a series of robberies at retail stores located within the Northern District of Ohio between December 5, 2021, and December 26, 2021. Investigators used LPRs located in various locations in and around the Northern District of Ohio to identify a suspect vehicle believed to have been associated with Mr. Sturdivant. With the LPR information, investigators developed Mr. Sturdivant as a suspect in this case, and eventually

obtained additional evidence allegedly connecting Mr. Sturdivant to the crimes charged in the Indictment.

Accordingly, Mr. Sturdivant moves this Court for an order authorizing the service of a Rule 17(c) subpoena on Flock Safety, Selex ES, LLC, Chagrin Valley Dispatch, the City of Highland Heights, the City of Newburgh Heights, and the City of Brooklyn for the specified information. Encompassed within this subpoena are the following definitions.

A. "Record" means each and every writing, of whatever nature, whether an original, a draft, or a copy, however produced, reproduced or stored, whether manually, mechanically, electronically, electromagnetically, or otherwise, and each and every tangible thing from which information can be processed or transcribed.

  I. The term "Record" also includes, but is not limited to, emails, text messages, chats, letters, telegrams, telexes, facsimiles, contracts, agreements, memoranda, receipts, calendars, appointment books, telephone messages and message logs, notes, schedules, worksheets, books, pamphlets, summaries, proposals, photographs, ledgers, statements, files, invoices, work papers, research materials, computer printouts and other computer generated writings, or any similar item.

  II. "Record" also includes all tangible, written or non-written forms of expression in your possession, custody, or control, including partial, preliminary and completed versions, however created, produced or stored, whether electronically, electromagnetically, or otherwise, including, but not limited to, tape recordings, video recordings, magnetic tapes, disks, diskettes, disk packs and other electronic media.

B. "Flock" means Flock Group Inc. and includes any and all of its affiliates, joint ventures, subsidiaries, predecessor entities, and successors in interests.

C. "ELSAG" means Selex ES, LLC, and includes any and all of its affiliates, joint ventures, subsidiaries, predecessor entities, and successors in interests.

D. "ALPR" or "LPR" means any camera or camera system, fixed, mobile, or otherwise, that can be used to identify vehicles.

E. "Relating to" includes all documents that constitute, contain, embody, comprise, reflect, identify, state, concern, refer to, pertain to, respond to, comment on, describe, analyze, or are in any way relevant to that subject, regardless of whether they explicitly mention or name the subject matter.

F. "Policy" or "Policies" includes all formal and informal statements, principles, guidelines, rules, or protocols.

- **Flock Safety**:

    For the period December 30, 2017 – December 30, 2022:

    1. Any records sufficient to show all Flock camera systems used by any government agencies in Cleveland, Ohio.

    2. Any records sufficient to show all Flock camera systems used by any government agencies in Cuyahoga County, Ohio.

    3. Any records sufficient to show the name of the administrator or administrators of Flock systems in Cuyahoga County, Ohio.

    4. Any records sufficient to show the number of Flock cameras within the city of Cleveland, Ohio.

    5. Any records sufficient to show all locations of Flock cameras within the city of Cleveland, Ohio.

    6. Any records sufficient to show the number of Flock cameras within the county of Cuyahoga, Ohio.

    7. Any records sufficient to show all locations of Flock cameras within the county of Cuyahoga, Ohio.

    8. Any records relating to the predictive or other analytical capabilities of the Flock camera system, including communications with employees, companies,

    organizations, groups, and law enforcement organizations or government entities, as well as marketing materials.

9. Copies of contract(s) with all government agencies within Cuyahoga County, Ohio.

10. Any policies and records relating to how data from the camera system is collected.

11. Any policies and records relating to the identification of individuals, Flock employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the Flock system.

12. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to access the Flock system.

13. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to share data recovered from the Flock system.

14. Any policies and records relating to the use or querying of Flock systems.

15. Any policies and records relating to the length of time Flock camera recordings are retained.

16. Any records relating to any privacy complaints received about Flock cameras in the last 5 years.

17. Any policies and records relating to the misuse of the Flock system by individuals, Flock employees, companies, organizations, groups, law enforcement organizations, or government entities.

18. Any policies and records relating to concerns about the use or scope of the Flock system.

19. Any policies and records relating to any Flock system false positives and steps taken to fix these issues.

20. Any policies and records relating to how Flock system data is stored and identification of individuals, Flock employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the stored data.

- **Selex ES, LLC**:

    For the period December 30, 2017 – December 30, 2022:

1. Any records sufficient to show all ELSAG camera systems used by any government agencies in Cleveland, Ohio.

2. Any records sufficient to show all ELSAG camera systems used by any government agencies in Cuyahoga County, Ohio.

3. Any records sufficient to show the name of the administrator or administrators of ELSAG systems in Cuyahoga County, Ohio.

4. Any records sufficient to show the number of ELSAG cameras within the city of Cleveland, Ohio.

5. Any records sufficient to show all locations of ELSAG cameras within the city of Cleveland, Ohio.

6. Any records sufficient to show the number of ELSAG cameras within the county of Cuyahoga, Ohio.

7. Any records sufficient to show all locations of ELSAG cameras within the county of Cuyahoga, Ohio.

8. Any records relating to the predictive or other analytical capabilities of the ELSAG camera system, including communications with employees, companies, organizations, groups, and law enforcement organizations or government entities, as well as marketing materials.

9. Copies of contract(s) with all government agencies within Cuyahoga County, Ohio.

10. Any policies and records relating to how data from the camera system is collected.

11. Any policies and records relating to the identification of individuals, ELSAG employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the ELSAG system.

12. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to access the ELSAG system.

13. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to share data recovered from the ELSAG system.

14. Any policies and records relating to the use or querying of ELSAG systems.

15. Any policies and records relating to the length of time ELSAG camera recordings are retained.

16. Any records relating to any privacy complaints received about ELSAG cameras in the last 5 years.

17. Any policies and records relating to the misuse of the ELSAG system by individuals, ELSAG employees, companies, organizations, groups, law enforcement organizations, or government entities.

18. Any policies and records relating to concerns about the use or scope of the ELSAG system.

19. Any policies and records relating to any ELSAG system false positives and steps taken to fix these issues.

20. Any policies and records relating to how ELSAG system data is stored and identification of individuals, ELSAG employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the stored data.

- **Chagrin Valley Dispatch**:

    For the period December 30, 2017 – December 30, 2022:

1. Any records sufficient to show all automatic license plate reader (LPR) camera systems queried or otherwise used by Chagrin Valley Dispatch.

2. Any records sufficient to show the name of the administrator or administrators of LPR systems.

3. Any records sufficient to show the number of LPR cameras Chagrin Valley Dispatch has access to.

4. Any records sufficient to show all locations of LPR cameras Chagrin Valley Dispatch has access to.

5. Any records relating to the predictive or other analytical capabilities of the LPR camera system, including communications with employees, companies, organizations, groups, and law enforcement organizations or government entities.

6. Copies of contract(s) with all third-party LPR systems.

7. Any policies and records relating to how data from the camera system is collected.

8. Any policies and records relating to the identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the LPR system.

9. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to access the LPR system.

10. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to share data recovered from the LPR system.

11. Any policies and records relating to the use or querying of LPR systems.

12. Any policies and records relating to the length of time LPR camera recordings are retained.

13. Any records relating to any privacy complaints received about LPR cameras in the last 5 years.

14. Any policies and records relating to the misuse of the LPR system by individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities.

15. Any policies and records relating to concerns about the use or scope of the LPR system.

16. Any policies and records relating to any LPR system false positives and steps taken to fix these issues.

17. Any policies and records relating to how LPR system data is stored and identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the stored data.

- **City of Highland Heights**:

  For the period December 30, 2017 – December 30, 2022:

1. Any records sufficient to show all automatic license plate reader (LPR) camera systems queried or otherwise used by the Highland Heights Police Department and/or city of Highland Heights.

2. Any records sufficient to show the name of the administrator or administrators of LPR systems.

3. Any records sufficient to show the number of LPR cameras within the city of Highland Heights.

4. Any records sufficient to show all locations of LPR cameras within the city of Highland Heights.

5. Any records relating to the predictive or other analytical capabilities of the LPR camera system, including communications with employees, companies, organizations, groups, law enforcement organizations, or government entities.

6. Copies of contract(s) with all third-party LPR systems.

7. Any policies and records relating to how data from the camera system is collected.

8. Any policies and records relating to the identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the LPR system.

9. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to access the LPR system.

10. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to share data recovered from the LPR system.

11. Any policies and records relating to the use or querying of LPR systems.

12. Any policies and records relating to the length of time LPR camera recordings are retained.

13. Any records relating to any privacy complaints received about LPR cameras in the last 5 years.

14. Any policies and records relating to the misuse of the LPR system by individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities.

15. Any policies and records relating to concerns about the use or scope of the LPR system.

16. Any policies and records relating to any LPR system false positives and steps taken to fix these issues.

17. Any policies and records relating to how LPR system data is stored and identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the stored data.

- **City of Newburgh Heights**:

    For the period December 30, 2017 – December 30, 2022:

1. Any records sufficient to show all automatic license plate reader (LPR) camera systems queried or otherwise used by the Newburgh Heights Police Department and/or city of Newburgh Heights.

2. Any records sufficient to show the name of the administrator or administrators of LPR systems.

3. Any records sufficient to show the number of LPR cameras within the city of Newburgh Heights.

4. Any records sufficient to show all locations of LPR cameras within the city of Newburgh Heights.

5. Any records relating to the predictive or other analytical capabilities of the LPR camera system, including communications with employees, companies, organizations, groups, law enforcement organizations, or government entities.

6. Copies of contract(s) with all third-party LPR systems.

7. Any policies and records relating to how data from the camera system is collected.

8. Any policies and records relating to the identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the LPR system.

9. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to access the LPR system.

10. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to share data recovered from the LPR system.

11. Any policies and records relating to the use or querying of LPR systems.

12. Any policies and records relating to the length of time LPR camera recordings are retained.

13. Any records relating to any privacy complaints received about LPR cameras in the last 5 years.

14. Any policies and records relating to the misuse of the LPR system by individuals, employees, companies, organizations, groups, law enforcement organizations or government entities.

15. Any policies and records relating to concerns about the use or scope of the LPR system.

16. Any policies and records relating to any LPR system false positives and steps taken to fix these issues.

17. Any policies and records relating to how LPR system data is stored and identification of individuals, employees, companies, organizations, groups, law enforcement organizations or government entities that have access to the stored data.

- **City of Brooklyn**:

   For the period December 30, 2017 – December 30, 2022:

1. Any records sufficient to show all automatic license plate reader (LPR) camera systems queried or otherwise used by the Brooklyn Police Department and/or city of Brooklyn.

2. Any records sufficient to show the name of the administrator or administrators of LPR systems.

3. Any records sufficient to show the number of LPR cameras within the city of Brooklyn.

4. Any records sufficient to show all locations of LPR cameras within the city of Brooklyn.

5. Any records relating to the predictive or other analytical capabilities of the LPR camera system, including communications with employees, companies, organizations, groups, law enforcement organizations, or government entities.

6. Copies of contract(s) with all third-party LPR systems.

7. Any policies and records relating to how data from the camera system is collected.

8. Any policies and records relating to the identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the LPR system.

9. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to access the LPR system.

10. Any policies and records relating to the circumstances that would allow individuals, companies, organizations, groups, law enforcement organizations, or government entities to share data recovered from the LPR system.

11. Any policies and records relating to the use or querying of LPR systems.

12. Any policies and records relating to the length of time LPR camera recordings are retained.

13. Any records relating to any privacy complaints received about LPR cameras in the last 5 years.

14. Any policies and records relating to the misuse of the LPR system by individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities.

15. Any policies and records relating to concerns about the use or scope of the LPR system.

16. Any policies and records relating to any LPR system false positives and steps taken to fix these issues.

17. Any policies and records relating to how LPR system data is stored and identification of individuals, employees, companies, organizations, groups, law enforcement organizations, or government entities that have access to the stored data.

## II. LAW AND ARGUMENT

Mr. Sturdivant respectfully requests that this Court grant his Motion for production of documents pursuant to Fed. R. Crim. P. 17(c) that could not otherwise be obtained through due diligence of counsel. Criminal Rule 17(c)(1), Producing Documents and Objects, provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Under *United States v. Nixon,* 418 U.S. 683, 699-700 (1974), a criminal defendant can subpoena materials or testimony if he can show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably

to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." Put simply, to carry his burden under Rule 17, a defendant "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id.*

Moreover, the Sixth Circuit case law provides that a criminal defendant is not required to first ask the government for discovery before subpoenaing evidence. Because the government does not possess or control all of the materials potentially relevant to a defendant's case and is not obligated to acquire materials possessed or controlled by others, criminal-procedure rules do not make the government the gatekeeper to evidence it may not have. *United States v. Llanez-Garcia*, 735 F. 3d 483, 493 (6th Cir. 2013). Even though the government's discovery production included photographs and location information associated with the LPRs utilized during the investigation in this case, the defense is entitled to additional information related to the prevalence, implementation, and data retention of the LPR program utilized by law enforcement officers in this matter. Mr. Sturdivant meets the standards outlined in *U.S. v. Nixon* as described herein.

While Rule 17 is typically utilized to obtain documents prior to trial, the Sixth Circuit has previously acknowledged the applicability of Rule 17 to obtain documents to be used in other proceedings. *See Llanez-Garcia*, 735 F. 3d at 493 (observing that Rule 17(c) "implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial or a hearing") (citing U.S. Const. amend. VI); *See also* 2 Charles Alan Wright et al., Federal Practice and Procedure § 272 (4th ed.) ("'Rule 17 is not limited to subpoenas for the trial' and a subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, a determination of a factual issue raised by a pre-trial motion, or a post-trial motion.") (Same).

    i.    *Relevancy*

The additional LPR information is relevant and material. It is likely that the government would seek to admit LPR location data and photographs related to a suspect vehicle during a trial in this in this matter. Additionally, the LPR information was used to develop Mr. Sturdivant as a suspect and as a basis to obtain additional evidence the government would seek to use against Mr. Sturdivant at trial. Depending on the prevalence of the LPR program within the Northern District of Ohio, and the policies related to the implementation of the LPR program, among other factors, the use of the LPR program by investigators in this case may have run afoul of Mr. Sturdivant's Fourth Amendment rights. The information sought in the subpoena is relevant and material to Mr. Sturdivant's assertion of his Constitutional rights against unreasonable searches and to mount a defense to the government's charges.

    *ii.    Admissibility*

The LPR program information is relevant to the alleged events and would be admissible, subject to authentication, at a pretrial motions hearing. Most—if not all—of the information requested likely constitutes business records or public records which are excepted from the hearsay rule. Fed. R. Evid. 803(6) and (8).

    *iii.    Specificity*

The scope of this request is limited to information related to the prevalence of use, implementation, and data retention polices that were in place two years before and two years after the offenses described in the Indictment. The defense has carefully tailored this request to be in compliance with the standards set forth in *Nixon*.

### III.    ORDER REGARDING PRODUCTION LOGISTICS

The information requested is necessary to further investigate the government's allegations, provide additional foundation for pretrial motions, and challenge evidence of guilt at trial. As outlined above, defense counsel requests that the Court issue an order that the sought-after

15

information be provided by a time certain, well in advance of trial, and no later than thirty days (30 days) after service of the subpoena.

## IV. CONCLUSION

The information sought is crucial to prepare for trial and potential suppression proceedings, and without such production the defense is unable to properly prepare or to effectively present its case. This request has not been made for the purpose of undue delay or harassment. Instead, this request is made in good faith and for good cause, will not unfairly prejudice any party, and is necessary to ensure that discovery may be completed in this case, that critical pretrial issues may be resolved, and that Mr. Sturdivant may adequately prepare his defense.

For good cause shown, Mr. Sturdivant respectfully requests that this Court grant his Motion for 17(c) Subpoenas and issue an order authorizing the service of the attached Rule 17(c) subpoenas.

Respectfully submitted,

/s/ *Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
**Flannery | Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
Tel./Fax: (216) 367-2094
paul@flannerygeorgalis.com

*Attorney for Defendant Lawrence Sturdivant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Paul M. Flannery*
Paul M. Flannery